Shaw, C. J.
This was an action of assumpsit, to recover a balance of account, amounting, with interest, to about 400 dollars, claimed to be due to the keeper of the Tremont House from the defendant. It appeared that Mr. Richard Haughton was the original debtor of the plaintiff, and that he died in 1841, leaving a will, by which the defendant was appointed his executor, and named as the legatee of the surplus of his property, after payment of his debts.
It was supposed, at the time, that this surplus would be a large one. The will was proved, and letters testamentary were granted, at the probate office, to the defendant, who gave the required bonds, with his two partners only as sureties. There was, therefore, no security but that of the mercantile firm, of which the defendant was the principal member, and if the principal failed, it was likely that the firm would also fail. The sum of 5,000 dollars was subsequently lent by the defendant to the firm, and, in the spring of 1843, the firm failed, and were discharged under the insolvent law. In November, 1843, the defendant resigned his trust, and Mr. E. G. Austin was appointed in his place. He obtained from the defendant various choses in action, of the estimated value of about 12,000 dollars, and, under the authority of the probate court, upon the receipt of so much, compromised with and released Mr. Haughton, as the debtor of the estate. The *354 estate was subsequently represented to be insolvent, commissioners were appointed to settle it, and they have as yet made no return.
The debt due to Mr. Tucker remaining unpaid, he addressed a letter to the defendant, requesting information with regard to it, and the defendant, in reply, wrote a letter, dated March 10, 1845, on which this action is brought. The letter. expresses extreme regret at the circumstances which had prevented the payment of the account. It begins by stating that, soon after the death of the testator, the defendant had written to the plaintiff, expressing great confidence that any claim he might have would be immediately paid, and saying that he thought the bill due from his brother must be small, as he died on the day when he was about to sail for Europe, and the defendant had understood him to say, that his bills at the Tremont House were paid. The letter is very penitential in its tone, and states all the circumstances of the case very fully; and the defendant says- he has been thus particular in stating the facts, from a sense of duty; that, if mortification and chagrin would pay the debts he owed to his brother’s estate, they would long since have been paid, and that, if he had the ability to do so, it ought to be and would be his first act, to place in the hands of the executor the whole amount due from the firm of James Haughton & Co., in addition to what he had already paid over, which would make enough to pay not far from two thirds of the debts of the estate. He concludes by expressing his deep regret that a claim should remain unsettled which was due to the plaintiff, between whom and his deceased brother there had been so much mutual regard and affection.
In the agreed statement of facts, the defendant admits that he has sufficient pecuniary ability to pay the claim of the plaintiff, but not the like proportion of the whole amount lost by the firm of J. Haughton & Co. Upon these facts, the court are of opinion that the action cannot be maintained.
In the first place there is no promise to the plaintiff. No particular form of words is necessary to constitute a promise.
If the paper shows that the writer took upon himself the *355 duty of paying, it amounts to a promise. In this letter, the defendant, expressing his deep regret at the loss of the creditors of the estate, through the failure of James Haughton & Co., and his mortification, &c., then adds the words relied on as a promise. “ And now if I should have the ability, it will be the first act I shall perform, to place in their (the creditors’) hands, the amount which was lost by the firm of James Haughton & Co., and which would have paid to them not far from two thirds of their several claims. To you,” &c., adding some words of special personal kindness, but no assurance or stipulation of any kind respecting his separate claim.
This is the only paper, which contains any contract, stipulation, or assurance of any kind, on the part of the defendant.
In the first place, here is no promise to pay money to the plaintiff. It is not that the words are not sufficient; when there is a good consideration, and one says to the other, it shall be my first act, on a certain contingency, to pay, it is a promise to pay. But here the extent of his undertaking is, to replace money to a certain amount in the hands of the creditors. The only construction is, not to pay any creditor any proportion of his particular debt, but to replace, in the hands of the administrator and personal representative, a sum equivalent to a loss the estate had sustained. The proportion which it would be of the whole claims was a mere estimate.
Again, it is urged that the defendant says, that such pay ment on his part would pay two thirds of the deficit. These are merely words of assurance.
2. But besides the above consideration, showing that the paper proves no promise to the plaintiff, there is another quite as strong; there is no consideration moving from the plaintiff to the defendant.
So far as his liability as executor forms the consideration for a promise, it had been absolutely released by the authority of the probate court. The plaintiff had done nothing, and said nothing, which could be a consideration. There are several other considerations applicable to the case, but those already mentioned are decisive. According to the agreement in the case, the

Plaintiff must be nonsuit.